IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GENEIA RICE and WALTER PARKER,** | : | Civil No. 1:21-CV-1528 |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | |
| **KBR,** | : | |
| | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

# **M E M O R A N D U M**

Before the court is Defendant KBR's motion for summary judgment. (Doc. 33.) For the reasons set forth below, the motion will be granted.

**I.   BACKGROUND**

This case arises from Plaintiff Geneia Rice's employment with KBR Services, LLC from January 2020 to May 2021.[1] (Doc. 35 ¶¶ 24, 43.) At the time, KBR provided warehousing services—including ordering, staging, inventory, logistics and delivery of computer equipment—to a U.S. Navy contractor at a base in Mechanicsburg, Pennsylvania. (*Id.* ¶ 2.) Rice, an African-American female, began

---

[1] KBR's fact statements are deemed admitted. Rice did not file a counterstatement of facts as required by Local Rule 56.1, and her status as a *pro se* litigant does not excuse her obligation to point to record evidence to controvert KBR's statement of facts. *See* LR 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *Williams v. Gavins*, No. 1:13-CV-0387, 2015 WL 65080 *4–5 (M.D. Pa. Jan. 5, 2015), *aff'd* 640 F. App'x 152 (3d Cir. 2016); *see also O'Neil v. White*, No. 1:20-CV-0085, 2020 WL 7711354 *2 n.3 (M.D. Pa. Dec. 29, 2020).

working at KBR's warehouse in April 2019 as a shipping and receiving clerk employed by the temporary agency DAV-Force, and in January 2020, KBR hired Rice directly. (*Id.* ¶ 13, 24.)

During the summer of 2019, Rice experienced several sexually inappropriate interactions with two temporary employees. In May or June 2019, a coworker asked Rice to show him her breasts, and about a month later, he told her that he had dreamed about her sitting on his lap. (*Id.* ¶ 14.) Additionally, in June or July 2019, another coworker reached from behind Rice to try to grab her breast. (*Id.* ¶ 17; Doc. 35-2 at 139:7–21.) Rice told her KBR supervisor Randy Spahr about these incidents, and he said he would handle it. (Doc. 35 ¶¶ 15, 18.) Both employees were eventually prohibited from working in the KBR warehouse because of repeated sexual misconduct. (Doc. 35-1 at 6, 74 (about 5 months later); Doc. 35 ¶ 19 (one to two weeks later).)

Rice also describes several racially offensive comments. (Doc. 35 ¶ 25.) In summer 2019, while discussing some companies' policies forbidding natural hairstyles, a coworker told Rice that she did not deserve her job because she wore her hair in cornrows. (Doc. 35-2 at 149:4–150:24.) In June 2020, during the nationwide George Floyd protests, several coworkers asked Rice and a Hispanic coworker if they were going looting after work and stated that Trump needs to keep "you people" out. (*Id.* at 154:20–155:4.) In September 2020, Rice overheard a male

coworker tell a female coworker of color with an afro that her hair looked like she stuck her finger in a socket. (*Id.* at 163:17–164:5.) Sometime between July and September 2020, Rice overheard an unidentified coworker use the term "monkeys" while discussing race discrimination in the workplace. (*Id.* at 168:2–169:16.)

On three occasions in August and September 2020, Rice believes she was treated differently because of her race. (Doc. 35 ¶ 26.) First, an office coworker intentionally gave her and another woman of color incorrect instructions on a work task, only to criticize them later for performing the task as instructed. (Doc. 35-2 at 242:16–24.) On September 9, 2020, the same coworker also scolded Rice about frequent and prolonged bathroom breaks; Rice was aware of similar restrictions on two other coworkers of color but none on Caucasian workers. (*Id.* at 176:17–177:24.) The next morning, on September 10, 2020, Spahr verbally counseled Rice for using her cell phone at work and leaving early, both of which she admits to doing, but Rice was not aware of Caucasian employees being similarly counseled even though they also engaged in these behaviors. (*Id.* at 195:1–11, 198:16–199:14; Doc. 35 ¶ 29.)

Later that day, Rice escalated her concerns by emailing Spahr's supervisor to complain about race discrimination and sexual harassment, and by filing a complaint of race discrimination with the Office of Federal Contract Compliance Programs ("OFCCP"). (Doc. 35 ¶¶ 30, 31; Doc. 35-2 at 91–96.) On October 6, 2020, KBR

3

received notice of Rice's OFCCP complaint, and a member of its human resources, Lindsay Padula, went on to interview Rice and others about the allegations. (Doc. 35 ¶¶ 34–35.) Following the investigation, KBR provided additional harassment training for its employees. (*Id.* ¶ 36.)

On September 29, 2020, Rice requested intermittent Family and Medical Leave Act ("FMLA") leave to care for her ailing father. (*Id.* at ¶ 38.) Her application was granted and she was permitted extensive intermittent FMLA leave through the end of 2020, working just 70.5 hours in October, 20.5 hours in November, and 20 hours in December. (*Id.*) After Rice worked one half day in January 2021, her FMLA leave became continuous. (*Id.* ¶¶ 38–39.)

In March 2021, Rice informed Spahr and Cigna she was requesting an extension on her FMLA leave to prevent it from expiring. (*Id.* ¶ 40.) Cigna notified Rice on April 13, 2021 that she was ineligible for more leave, so on May 11, 2021, Padula emailed instructions for Rice to return to work on May 17, 2021—approximately two weeks after Rice's father's death—or she would be deemed to have voluntarily resigned. (*Id.* ¶ 41.) Rice did not report to work, and Padula denied Rice's subsequent request for more time, after KBR had given Rice more than twenty-eight weeks of FMLA leave. (*Id.* ¶¶ 42, 43.) In effect, Rice voluntarily resigned from KBR in May 2021. (*Id.* ¶ 43.)

Rice initiated this action in September 2021 by filing a *pro se* complaint, asserting claims for race- and sex-based discrimination and retaliation under Title VII and the Pennsylvania Human Relations Act ("PHRA") and failure to provide a reasonable accommodation under the Americans with Disabilities Act and the PHRA.[2] KBR has filed a motion for summary judgment on all Rice's claims. (Doc. 33.) The motion has been fully briefed and is ripe for review.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and

---

[2] Rice jointly filed the complaint with her husband, co-plaintiff Walter Parker, whose claims against KBR were dismissed for failure to state a claim. (*See* Docs. 28, 41.) Although the dismissal order granted Parker leave to amend the complaint, he has not yet done so and his deadline has long since passed. (*See* Doc. 45.) Accordingly, Rice's claims alone remain in this action.

5

draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)).

6

### III. DISCUSSION

#### A. KBR is entitled to summary judgment on Rice's race discrimination claims.[3]

KBR's motion argues that it is entitled to judgment on Rice's race discrimination claims because Rice has not demonstrated an adverse employment action. Because Rice relies on indirect evidence to establish her discrimination claim, the three-step *McDonnell Douglas* burden-shifting framework applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1974); *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016). Under the framework, the plaintiff must establish a *prima facie* case of discrimination by showing that "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Id.* (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999)). If the plaintiff successfully makes a *prima facie* case, "the burden then shifts to the employer to articulate a legitimate . . . nondiscriminatory reason for its actions." *Tourtellotte*, 636 F. App'x at 842. After that, if the employer satisfies its burden, the plaintiff must prove, by a

---

[3] The Third Circuit has held that "[c]laims under the PHRA are interpreted coextensively with Title VII claims" and can thus be analyzed simultaneously. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157 (3d Cir. 2013).

7

preponderance of the evidence, that the proffered explanation is "merely a pretext for the discrimination." *Id.*

Here, KBR is entitled to summary judgment on Rice's race discrimination claim because the record contains no evidence that Rice suffered an adverse employment action. Adverse employment actions include discharge, failure to hire, and other actions "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (internal quotation marks omitted)). Rice was not terminated by KBR, and there is no reason to believe the verbal reprimands she received, to the extent they were based on race, were sufficiently serious and tangible as to change her employment conditions. *Cf. Boykins v. SEPTA*, 722 F. App'x 148, 159 (3d Cir. 2018) (finding no adverse action where the "alleged retaliatory acts were criticism, false accusations or verbal reprimands") (quoting *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003)); *see also Deans v. Kennedy House, Inc.*, 998 F. Supp. 2d 393, 410–11 (E.D. Pa.), *aff'd*, 587 F. App'x 731 (3d Cir. 2014) (no adverse employment action where the plaintiff received two disciplinary warnings under a progressive discipline schedule); *Blake v. Penn State Univ. Greater Allegheny Campus*, No. 09-1182, 2011 WL 841374, at *9 (W.D. Pa. Mar. 8, 2011) (no adverse employment action where the plaintiff was berated before coworkers based on insignificant grounds and provided harsh work assignments).

Nor can Rice alternatively establish that she was subjected to a hostile work environment based on race. A hostile work environment claim requires the plaintiff to show (1) intentional discrimination based on race; (2) severe or pervasive conduct; (3) a detrimental effect on the plaintiff; (4) a detrimental effect on a reasonable person in similar circumstances; and (5) the existence of *respondeat superior* liability. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013); *Faragher v. City of Boca Raton*, 524 U.S. 775, 786–87 (1998). A hostile work environment violates Title VII only if it is so severe and pervasive that it "alters the conditions of the victim's employment" and creates an "abusive working environment." *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001)). Hostility is assessed both objectively and subjectively. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In assessing hostility, the court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Castleberry v. STI Group*, 863 F.3d 259, 264 (3d Cir. 2017) (quoting *Harris*, 510 U.S. at 23). Offhand comments and isolated incidents are typically insufficient to establish a hostile work environment. *Faragher*, 524 U.S. at 778. At the same time,

9

even infrequent discriminatory acts may rise to the level of a hostile work environment if they are particularly extreme. *See Castleberry*, 863 F.3d at 265.

Here, the record supports that Rice experienced approximately five racially offensive incidents with her coworkers over the course of eighteen months.[4] While her coworkers' comments on black hairstyles, looting, and "monkeys" are undeniably reprehensible, there is no indication the incidents were physically threatening or humiliating to Rice, or that they interfered with her work duties in any meaningful way. Rice's mistreatment was not relentless but periodic, and none of the above comments are sufficiently extreme to establish severe or pervasive treatment without more frequency. *Cf. Castleberry*, 863 F.3d at 265. To the extent that a jury could conclude from Rice's testimony that her coworker's incorrect instructions and scolding about bathroom usage were based on race, these two conversations fall short of being objectively abusive or threatening. They do not, even when combined with above incidents, rise to the level of an actionable hostile work environment. *See Greer*, 590 F. App'x at 173 ("The threshold for pervasiveness and regularity of discriminatory conduct is high."); *Woodard v. PHB*

---

[4] The court has excluded from its consideration Rice's allegation about Spahr's verbal counseling. Rice testified in speculative terms that white employees were not reprimanded for leaving early and using their phones at work, but speculation alone is insufficient to show that Spahr enforced company policies, which Rice admittedly violated, against her because of her race. *See Jones*, 198 F.3d at 414 (affidavit allegations predicated on the plaintiff's beliefs rather than actual knowledge were insufficient to avoid summary judgment).

10

*Die Casting*, 255 F. App'x 608, 609–10 (3d Cir. 2007) (finding no harassment claim where the plaintiff's employer failed to remove a KKK sign and cross-burning graffiti from the bathroom for months, considered together with insensitive comments from coworkers referring to the plaintiff as "you people" and asking him whether he was going to deal drugs); *Canada v. Samuel Grossi & Sons, Inc.*, 476 F. Supp. 3d 42, 58–59, (E.D. Pa. 2020) (three coworkers' use of the n-word six times, including four times in the plaintiff's presence over sixteen months, was not severe or pervasive), *rev'd on other grounds*, 49 F.4th 340 (3d Cir. 2022).

While Rice points to various documents related to the Equal Employment Opportunity Commission ("EEOC") in support of her race-based claim for hostile work environment, the evidence on which she relies is insufficient to defeat summary judgment. For example, Rice submits various OFCCP complaints by other KBR employees of color, but the complaints contain multiple levels of hearsay, and Rice offers no explanation of how they could be presented for their truth at trial in an admissible form. *See* FED. R. EVID. 801(c), 802, 805; *see also* FED. CIV. P. 56(e) advisory committee note to the 2010 amendment (requiring the proponent of hearsay evidence to "explain the admissible form that is anticipated"). Moreover, while Rice cites a partial conciliation agreement between KBR and an unidentified party, such a document is almost certainly inadmissible because any minimal probative value such an agreement has for showing that KBR discriminated against Rice based on

11

her race is substantially outweighed by unfair prejudice to KBR. *See* FED. R. EVID. 403, 408; *see also White v. Honda of Am. Mfg., Inc.*, No. C2-07-216, 2009 WL 3150311, at *4 (S.D. Ohio Sept. 30, 2009) ("All evidence regarding the parties' efforts to negotiate a settlement and the final Conciliation Agreement itself are inadmissible by operation of Title VII and the Federal Rule of Evidence 408."); 42 U.S.C. § 2000e-5(b) ("Nothing said or done during and as part of [the EEOC's informal claim dispute process] may be made public by the Commission . . . or used as evidence in a subsequent proceeding without the written consent of the persons concerned.") (bracketed information supplied); *Branch v. Petroleum Co.*, 638 F.2d 873, 879 (5th Cir. 1981) (Permitting such disclosure "would discourage negotiated settlement and frustrate the intention of Congress.").

In sum, because a reasonable jury could not find that Rice experienced adverse employment action, through a hostile work environment or otherwise, her race discrimination claims fail.

### B. KBR is entitled to summary judgment on Rice's remaining claims.

Rice's remaining three categories of claims for retaliation, hostile work environment based on sex, and disability discrimination must also be dismissed. First, Rice appears to have disavowed her retaliation claims by denying they were filed for herself, testifying: "the retaliation part is for my husband." (Doc. 35-2 at 209:18–22; *see also* Doc. 35 ¶ 46.) Rice's testimony is consistent with the text of the

12

complaint, which avers that she witnessed retaliatory behavior but never actually contends she was retaliated against for her OFCCP complaint. (See Doc. 1-2 at 2.)

Moreover, even if Rice has not disavowed her retaliation claim, KBR is nevertheless entitled to summary judgment because there is no evidence that she suffered an adverse employment action under Title VII and the PHRA. *See Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 320 (3d Cir. 2008) (requiring a plaintiff alleging retaliation under Title VII and the PHRA to demonstrate that she suffered adverse action from her employer as a result of her protected activity); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (action is materially adverse if it it "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination"). Rice cites no evidence to suggest that she experienced a material change in the conditions of her employment, as discussed above. Moreover, the Third Circuit has expressly held that "criticism, false accusations or verbal reprimands" are insufficient to show an adverse action for purposes of retaliation, and Rice's additional allegation that co-workers openly discussed the investigation into her complaint does not come close to pushing her claim over the line. *See Boykins*, 722 F. App'x at 159 (3d Cir. 2018) (quoting *Brennan*, 350 F.3d at 419). (*See* Doc. 42 at 1; Doc. 35-2 at 110:6–112:15.)

Second, Rice's sexual harassment claims must be dismissed because she did not timely exhaust the claims. Rice filed her OFCCP complaint on September 10,

13

2020, more than one year after her most recent alleged incident of sexual misconduct in July 2019, exceeding every applicable deadline. 42 U.S.C. § 2000e-5(e)(1) (within 300 days under Title VII); 41 C.F.R. §60-1.21 (within 180 days under regulations governing OFCCP discrimination charges); 43 P.S. § 959(h) (within 180 days under the PHRA). In response to KBR's motion for judgment on this basis, Rice did not controvert the above facts or provide any grounds to excuse her delay.

Finally, Rice also failed to properly exhaust her administrative remedies in connection with her disability discrimination claims. Before filing a disability discrimination claim in federal court, plaintiffs must file and exhaust their charge with the appropriate administrative agency. *See Tourtellotte*, 636 F. App'x at 850–51 (citing *Williams v. Runyon*, 130 F.3d 568, 573–74 (3d Cir. 1997)). Rice's OFCCP charge does not refer to her alleged disability, nor did she check the box for "disability" as a basis for discrimination or retaliation. (Doc. 35-2 at 91–95.) Thus, the OFCCP lacked adequate notice to investigate a disability discrimination claim, and dismissal is required. *Tourtellotte*, 636 F. App'x at 851 (affirming a grant of summary judgment where the plaintiff's EEOC charge did not check the box for disability discrimination or include any factual statements to provide the EEOC notice of the claim). In response, Rice did not point to any evidence to create a genuine issue of material fact concerning her failure to exhaust her disability

discrimination claims. (*See generally* Docs. 42, 42-1.) *See also Tourtellotte*, 636 F. App'x at 851. Accordingly, KBR is entitled to judgment on all claims.

## IV. CONCLUSION

For the reasons explained above, Defendant KBR's motion for summary judgment will be granted. An appropriate order shall follow.

*s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: March 23, 2023